# IN THE SUPREME COURT OF TEXAS

═══════════

No. 12-0804

═══════════

GARY WAYNE JASTER, PETITIONER,

v.

COMET II CONSTRUCTION, INC., JOE H. SCHNEIDER, LAURA H. SCHNEIDER, AND AUSTIN DESIGN GROUP, RESPONDENTS

═══════════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE THIRD DISTRICT OF TEXAS

═══════════════════════════════════════════════════════

**Argued October 9, 2013**

JUSTICE BOYD announced the Court's disposition and delivered a plurality opinion, in which JUSTICE JOHNSON, JUSTICE WILLETT, and JUSTICE DEVINE joined.

JUSTICE WILLETT filed a concurring opinion, in which JUSTICE LEHRMANN joined in part, and in which JUSTICE DEVINE joined.

CHIEF JUSTICE HECHT filed a dissenting opinion, in which JUSTICE GREEN and JUSTICE GUZMAN joined, and in which JUSTICE BROWN joined in all but Part II.

Chapter 150 of the Texas Civil Practice and Remedies Code requires "the plaintiff" in "any action or arbitration proceeding for damages arising out of the provision of professional services by a licensed or registered professional" architect, engineer, land surveyor, or landscape engineer to file a supporting expert affidavit "with the complaint." The issue in this case is whether this requirement applies to a defendant or third-party defendant who files a third-party claim or cross-claim against a licensed or registered professional. Concluding that cross-claimants and third-party plaintiffs are

not "the plaintiff" in an "action or arbitration proceeding," we hold that the statute's expert affidavit requirement does not apply to them.

# I.
## Background

Mahmoud Dawoud purchased a home from Comet II Construction, Inc. About ten years later, Dawoud sued Comet[1] for negligence, negligent misrepresentations, fraud, deceptive trade practices, and breach of contract, alleging that Comet defectively designed and constructed the home's foundation. Comet denied any liability and asserted third-party claims against Austin Design Group, from whom Comet had purchased the foundation plans, and against Gary Wayne Jaster, the licensed professional engineer who had prepared the plans. Comet sought contribution and indemnity from the third-party defendants, alleging that they "are or may be liable to [Comet] for all or part of [Mahmoud's] complaint." Austin Design Group filed a counterclaim against Comet and a cross-claim against Jaster, seeking contribution and indemnity and asserting that, "[t]o the extent there is any defect in the foundation, whether by design or construction, it is the fault of [Jaster or Comet] and not the fault of Austin Design Group."

Jaster filed a motion to dismiss Comet's third-party claim and Austin Design Group's cross-claim, arguing that they were each "the plaintiff" as to those claims, that he was a licensed professional engineer, and that they had failed to file an expert affidavit (which the statute refers to as a "certificate of merit") as chapter 150 requires. In response, Comet filed an amended third-party

---

[1] Dawoud also sued Comet's principals, Joe and Laura Schneider. We refer to all three defendants jointly as "Comet."

petition, this time attaching a certificate of merit.[2] Jaster then filed an amended motion to dismiss, arguing that Comet did not comply with the statute because it did not file the certificate of merit with the original third-party petition and thus did not file it "with the complaint."

The trial court denied Jaster's motion to dismiss, and Jaster filed this interlocutory appeal.[3] With one justice dissenting, the court of appeals affirmed, concluding that chapter 150 does not require third-party plaintiffs or cross-claimants to file a certificate of merit. 382 S.W.3d 554. Jaster filed a petition for review, which we granted.

## II.
### "The Plaintiff" in an "Action" Under Section 150.002

Jaster contends that section 150.002 of the Texas Civil Practice and Remedies Code requires dismissal of the claims that Comet and Austin Design Group asserted against him in this case. The 2005 version of this section, which governs this action, provided:

> In any action or arbitration proceeding for damages arising out of the provision of professional services by a licensed or registered professional, the plaintiff shall be required to file with the complaint an affidavit of a third-party licensed architect, registered professional land surveyor, or licensed professional engineer competent to testify, holding the same professional license as, and practicing in the same area of practice as the defendant, which affidavit shall set forth specifically at least one negligent act, error, or omission claimed to exist and the factual basis for each such claim.

Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 20.01, 2003 Tex. Gen. Laws 847, 896–97, *amended by* Act of May 12, 2005, 79th Leg., R.S., ch. 189, § 4, 2005 Tex. Gen. Laws 348, 348 *and* Act of

---

[2] Comet later filed a second amended third-party petition, attaching the same certificate of merit.

[3] The statute expressly authorizes an interlocutory appeal from an order granting or denying a motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE § 150.002(f).

May 27, 2005, 79th Leg., R.S., ch. 208, § 2, 2005 Tex. Gen. Laws 369, 370 *and* Act of May 27, 2009, 81st Leg., R.S., ch. 789, § 2, 2009 Tex. Gen. Laws 1991, 1992 (current version codified at TEX. CIV. PRAC. & REM. CODE § 150.002).[4] "The plaintiff's failure to file the affidavit in accordance with this section shall result in dismissal of the complaint against the defendant" and "[t]his dismissal may be with prejudice." *Id*. § 150.002(e).[5]

The parties do not dispute that Jaster is a licensed professional engineer and thus a "licensed or registered professional,"[6] or that the claims that Comet and Austin Design Group assert against him arise out of the provision of professional services. Neither Comet nor Austin Design Group filed a certificate of merit when they originally filed their claims against him. The only issue in this appeal is whether the statute required them to do so.

Jaster argues: (1) for purposes of section 150.002, "there is no meaningful distinction" between an original "plaintiff" and a third-party plaintiff or a cross-claimant because they all assert affirmative claims for relief and are subject to the same pleading requirements; (2) third-party claims and cross-claims are "actions," and thus must comply with the statute's requirements for "any

---

[4] Our references to section 150.002 are to the 2005 version of the statute, which the parties agree governs this case. The Legislature has since amended section 150.002, but the current version still imposes the certificate-of-merit requirement on "the plaintiff" in "any action or arbitration proceeding for damages arising out of the provision of professional services by a licensed or registered professional," including a licensed professional engineer. *See* TEX. CIV. PRAC. & REM. CODE § 150.002(a). Thus, our construction of the 2005 version also applies to the current version of the statute.

[5] This provision was found in subsection (d) in the 2005 version of the statute and was substantively the same for purposes of this case. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 20.01, 2003 Tex. Gen. Laws 847, 896–97 (amended 2005, 2009) (current version codified at TEX. CIV. PRAC. & REM. CODE § 150.002(e)).

[6] Chapter 150 defines "licensed or registered professional" to include licensed architects, licensed professional engineers, registered professional land surveyors, registered landscape architects, and firms in which such licensed or registered professionals practice. *See* TEX. CIV. PRAC. & REM. CODE § 150.001(1-a).

action"; and (3) not applying the requirement to third-party plaintiffs and cross-claimants thwarts "the statute's purpose to protect licensed professionals from unmeritorious or frivolous claims." In response, Comet and Austin Design Group contend: (1) because the statute uses the word "plaintiff" rather than the more inclusive term "claimant," the certificate-of-merit requirement applies only to a party that initiates a lawsuit; (2) requiring a defendant who denies the plaintiff's allegations to file a certificate of merit that supports the plaintiff's claims would be "absurd," "unfair," and "unreasonable"; and (3) if applying the requirement only to "the plaintiff" undermines the statute's purpose, the Legislature should address that problem, not the courts.[7] After briefly reviewing the courts of appeals' decisions addressing this issue, we consider the language of the statute and its context, and conclude that they compel us to agree with Comet and Austin Design Group.

## A. Judicial Constructions of Section 150.002

Three Texas courts of appeals have addressed section 150.002's certificate-of-merit requirement in the context of third-party plaintiffs or cross-claimants.[8] First, in *DLB Architects, P.C. v. Weaver*, the Dallas Court of Appeals applied the requirement to a defendant who asserted third-party claims for contribution and indemnity against out-of-state architects. 305 S.W.3d 407, 411 (Tex. App.—Dallas 2010, pet. denied). The third-party plaintiff argued that the requirement applies only to architects licensed in Texas, and the court rejected that argument. *Id.* at 410–11. But neither

---

[7] Comet and Austin Design Group argue additional grounds for affirming the appellate court's judgment, but we need not reach them in light of our construction of the statute.

[8] We recently addressed section 150.002 in *CTL/Thompson Tex., L.L.C. v. Starwood Homeowners Ass'n*, but that appeal did not involve the issue of whether the certificate-of-merit requirement applies to parties other than a "plaintiff." 390 S.W.3d 299 (Tex. 2013).

party argued that the requirement did not apply to third-party plaintiffs, and the court applied the requirement without addressing that issue. *Id.*

Next, the Fort Worth Court of Appeals became the first to expressly address the issue in *CTL/Thompson Texas, LLC v. Morrison Homes*, 337 S.W.3d 437 (Tex. App.—Fort Worth 2011, pet. denied). In that case, a homebuilder sued a land developer and several engineers over a real estate transaction and filed a certificate of merit with the original petition. *Id.* at 439. The land developer brought cross-claims against the engineers, but instead of filing a certificate of merit, he incorporated the homebuilder's certificate of merit into his cross-petition by reference. *Id*. The engineers argued that the statute required the developer to file his own certificate of merit to support the cross-claims. *Id.* at 440. The court of appeals held that the statute does not apply to a defendant who merely files cross-claims against another defendant. *Id*. at 445–46. The court rejected the engineer's reliance on *DLB Architects* on the ground that it involved a defendant who filed third-party claims against a new third-party defendant, rather than cross-claims against a defendant who was already in the case. *Id*. The court reasoned that there is no need to require a cross-claimant to file a certificate of merit because "the plaintiff will have already filed [one]," or "if not, the plaintiff's claims are subject to dismissal." *Id.* at 445. But because the plaintiff will not have already filed a certificate of merit addressing the conduct of a new third-party defendant, the court reasoned that a third-party plaintiff should be required to do so, even if a cross-claimant is not. *Id.* at 445–46.

Finally, in the case before us today, the Austin Court of Appeals held that the statute does not require third-party plaintiffs or cross-claimants to file a certificate of merit. The court identified many respects in which third-party plaintiffs and cross-claimants are both similar to and yet different

6

from original plaintiffs. 382 S.W.3d at 559–60. The majority observed that "the statute does not specifically address defendants filing third-party complaints and cross-claims" and suggested that "there are multiple options of how the certificate-of-merit requirement could be applied to them," depending on whether the claims are original to the defendant or derived from the plaintiff's claims and whether they assert the claims against new parties or parties already in the suit. *Id*. at 560. After considering the potential "unintended consequences of an expansive definition of 'plaintiff,'" *id*. at 561, the majority noted that the statute uses the word "plaintiff" instead of "claimant" and does so without defining it to include third-party plaintiffs and cross-claimants. *Id*. at 561–62. Considering the "difficulties in judicially imposing . . . a broader definition of 'the plaintiff,'" the majority decided to "resist the urge to judicially create a solution to the statute's failure to address third-party complaints and cross-claims," and held that the statute "does not require a certificate of merit from a defendant who files a third-party complaint or cross-claim." *Id*. at 562.

The dissenting justice in the Austin Court of Appeals concluded that requiring plaintiffs who sue certain professionals to file a certificate of merit but not requiring defendants who sue such professionals to do so is "an absurd result." *Id*. at 565 (Henson, J., dissenting). In her view, the majority's construction undermines the statute's purpose "to provide a method by which courts can quickly dismiss meritless claims" and ignores the reality that, from the licensed or registered professional's perspective, "third-party plaintiffs and cross-claimants are certainly 'plaintiffs' with regard to the third-party claims and cross-claims[.]" *Id*. at 564–65.

## B.  The Language of the Statute

We resolve the issue in this case by looking to the language of the statute, which we construe de novo. *Nathan v. Whittington*, 408 S.W.3d 870, 872 (Tex. 2013). We must enforce the statute "as written" and "refrain from rewriting text that lawmakers chose." *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 443 (Tex. 2009). We limit our analysis to the words of the statute and apply the plain meaning of those words "unless a different meaning is apparent from the context or the plain meaning leads to absurd or nonsensical results." *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). While we must consider the specific statutory language at issue, we must do so while looking to the statute as a whole, rather than as "isolated provisions." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). We "endeavor to read the statute contextually, giving effect to every word, clause, and sentence." *In re Office of Att'y Gen.*, 422 S.W.3d 623, 629 (Tex. 2013). We thus begin our analysis with the statute's words and then consider the apparent meaning of those words within their context.[9]

### 1.  The Words of the Statute

Section 150.002 requires "the plaintiff" in "any action or arbitration proceeding" to file a certificate of merit. Chapter 150 does not define the terms "plaintiff" or "action," so we must give them their common, ordinary meaning unless the statute clearly indicates a different result. *See Molinet*, 356 S.W.3d at 411. That is not to say that we must (or may only) give undefined words their

---

[9] By contrast, the dissent begins with its own conclusion, suggesting that the resolution of this case should "be pretty easy" because, after all, it says (without citation), "a third-party *plaintiff* is, in name itself, a plaintiff, and a suit is an action." *Post* at ___ (Hecht, C.J., dissenting) (emphasis in original). We cannot be quite so cavalier when fulfilling our duty to construe Texas statutes, and we cannot begin our analysis with our own unsupported conclusions on the very issue before us. We begin, instead, with the language of the statute.

*only* meaning, for words can have more than one meaning. The dissent asserts that, "[w]hen a word is used sometimes to mean one thing and sometimes another, neither is 'plain,' 'common,' or 'ordinary' to the exclusion of the other." *Post* at ___. We disagree. When a statute uses a word that it does not define, our task is to determine and apply the word's common, ordinary meaning. The fact that the word may sometimes be used to convey a different meaning is the very reason why we look for its *common, ordinary* meaning. To determine its common, ordinary meaning, we look to a wide variety of sources, including dictionary definitions, treatises and commentaries, our own prior constructions of the word in other contexts, the use and definitions of the word in other statutes and ordinances, and the use of the words in our rules of evidence and procedure.[10]

We begin by reviewing dictionary definitions of the words "plaintiff" and "action." *See Epps v. Fowler*, 351 S.W.3d 862, 873 (Tex. 2011) (Hecht, J., dissenting) ("The place to look for the ordinary meaning of words is . . . a dictionary."). Dictionaries consistently define a "plaintiff" as a party or person who brings or files a "civil suit" or "legal action." *See, e.g.*, BLACK'S LAW DICTIONARY 1171 (7th ed. 1999) (defining "plaintiff" as "[t]he party who brings a civil suit in a

---

[10] Examples of our reliance on these various sources to determine a word's common, ordinary meaning are too numerous to cite, but for examples from opinions we issued just within the past two years, see *Zanchi v. Lane*, 408 S.W.3d 373, 378 (Tex. 2013) (relying on dictionary definitions, our prior decisions, the rules of procedure, and statutory definitions for the common meaning of "party"); *Rachal v. Reitz*, 403 S.W.3d 840, 845 (Tex. 2013) (relying on dictionary definitions and treatises for the common meaning of "agreement"); *Morton v. Nguyen*, 412 S.W.3d 506, 510–12 (Tex. 2013) (relying on our prior decisions, dictionary definitions, and the Restatement for the common meanings of "rescission" and "refund"); *City of Hous. v. Bates*, 406 S.W.3d 539, 545–47 (Tex. 2013) (relying on dictionary definitions and a city ordinance for the common meanings of "leave" and "salary"); *State v. $1,706.00 in U.S. Currency*, 406 S.W.3d 177, 181 (Tex. 2013) (per curiam) (relying on dictionary definition of "novelty"); *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 512 n.16 (Tex. 2012) (relying on dictionary definitions and our prior opinions for the common meaning of "requisite"); *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 382–83 (Tex. 2012) (relying on our prior opinions, other statutes, and treatises for the common meaning of "property"); *Traxler v. Entergy Gulf States, Inc.*, 376 S.W.3d 742, 747 (Tex. 2012) (relying on dictionary definition for common meanings of "distribution" and "transmission").

court of law"); Garner, Bryan, A DICTIONARY OF MODERN LEGAL USAGE 665 (2nd ed. 1995) (defining "plaintiff" as "the party who brings suit in a court of law"); MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 888 (10th ed. 1993) (defining "plaintiff" as "a person who brings a legal action"). Thus, both the statute and the dictionary definitions recognize a direct relationship between the words "plaintiff" and "action." Jaster contends that "any action," as used in section 150.002, includes each separate claim or cause of action that any party may assert, including an original plaintiff's claims, third-party claims, and cross-claims. This, however, is not the common, ordinary meaning of "action."

The common meaning of the term "action" refers to an entire lawsuit or cause or proceeding, not to discrete "claims" or "causes of action" asserted within a suit, cause, or proceeding. BLACK'S LAW DICTIONARY at 28 (defining "action" as "[a] civil or criminal judicial proceeding"). "The term 'action' is generally synonymous with 'suit,' which is a demand of one's rights in court." *Thomas v. Oldham*, 895 S.W.2d 352, 356 (Tex. 1995); *see also In re Marriage of Combs*, 958 S.W.2d 848, 850 (Tex. App.—Amarillo 1997, no pet.) (holding that an "action" is "a demand for one's legal right and has been held synonymous with 'suit'"). A suit, in turn, is "any proceeding in a court of justice by which an individual pursues that remedy in a court of justice which the law affords him." *H.H. Watson Co. v. Cobb Grain Co.*, 292 S.W. 174, 176 (Tex. 1927) (citing *Weston v. City Council of Charleston*, 27 U.S. 449, 464 (1829)). Although the word "suit" can be "more general in its comprehension than the word 'action,'" both terms refer to a judicial proceeding in which parties assert claims for relief. *Id*. Thus, under the common definition, "[a]n action is a judicial proceeding, either in law or in equity, to obtain certain relief at the hands of the court." *Elmo v. James*, 282 S.W.

10

835, 839 (Tex. Civ. App.—Fort Worth 1926, writ dism'd w.o.j.). Historically, "action" referred to a judicial proceeding in a court of law, while "suit" referred to a proceeding in a court of equity. BLACK'S LAW DICTIONARY at 29.

A "cause of action," by contrast, "has been defined 'as a fact or facts entitling one to institute and maintain an action, which must be alleged and proved in order to obtain relief.'" *A.H. Belo Corp. v. Blanton*, 129 S.W.2d 619, 621 (Tex. 1939) (quoting 1 TEX. JUR. p. 61 sec. 15). As we recently noted, this is "the generally accepted meaning" of the term "cause of action." *Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012) (quoting *In re Jorden*, 249 S.W.3d 416, 421 (Tex. 2008)). Thus, a "cause of action" and an "action" are not synonymous; rather, the "cause of action" is the right to relief that entitles a person to maintain "an action." *Id.* "The right to maintain an action depends upon the existence of a cause of action, which involves the combination of a right on the part of the plaintiff and a violation of such right by the defendant." *Bell v. Moores*, 832 S.W.2d 749, 752 (Tex. App.—Houston [14th Dist.] 1992, writ denied).[11]

A "cause of action" is thus similar to a "claim," in that they both refer to a legal right that a party asserts in the suit that constitutes the action. *See Torch Energy Advisors Inc. v. Plains Exploration & Prod. Co.*, 409 S.W.3d 46, 56 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (noting that the ordinary meaning of "claim" is "the assertion of an existing right; any right to payment or

---

[11] *See also Magill v. Watson*, 409 S.W.3d 673, 679 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (a "cause of action" consists of "those facts entitling one to institute and maintain an action at law or in equity"); *City of Texarkana v. Cities of New Boston*, 141 S.W.3d 778, 788 (Tex. App.—Texarkana 2004, no pet.) (stating that a "pleading" is the vehicle for "alleging a cause of action" and thus the "means by which one party institutes a lawsuit."); *Elmo v. James*, 282 S.W. 835, 839 (Tex. Civ. App.—Fort Worth 1926, writ dism'd w.o.j.) ("The facts necessary to be alleged and proved in order to obtain the relief sought, and on account of which the action is instituted, logically constitute the cause of action.").

to an equitable remedy," and "the aggregate of operative facts giving rise to a right enforceable by a court"). Thus, a "cause of action may exist before a suit is instituted." *Magill*, 409 S.W.3d at 679. But for there to be a "suit" or "action," it is "essential that it rest in a court, with the power to hear it. Without such a forum, it is not 'a suit,' since it lacks that which is as necessary to make it a suit as the petition itself." *United Prod. Corp. v. Hughes*, 152 S.W.2d 327, 330 (Tex. 1941) (quoting *Pecos & N. T. Ry. Co. v. Rayzor*, 172 S.W. 1103, 1104 (Tex. 1915)). Recognizing these distinctions, this Court has used the terms "case," "cause," "suit," "lawsuit," "action," and "proceeding" interchangeably, while using the terms "claim," "cause of action," and "chose in action" to refer to the facts giving rise to a right that is enforceable in that proceeding. *See, e.g.*, *State Farm Fire & Cas. Co. v. Gandy*, 925 S.W.2d 696, 698–708 (Tex. 1996).

Consistent with the common, ordinary usage of these terms, the Dallas Court of Appeals has expressly concluded that "the term *action* in section 10.01 [of the Civil Practice and Remedies Code] means 'suit,'" not "cause of action." *Bradley v. Etessam*, 703 S.W.2d 237, 241 (Tex. App.—Dallas 1985, writ ref'd n.r.e.) (emphasis in original). Similarly, the Amarillo Court of Appeals has concluded that a counter-claim is not an "action" as the Family Code uses that term. *Combs*, 958 S.W.2d at 850.[12]

_____

[12] Generally, our rules of civil procedure also recognize the distinction between an "action," "suit," or "cause" and a "cause of action" or "claim." *Compare, e.g.*, TEX. R. CIV. P. 86 (referring to transfer of venue "from the county where *the action* is pending") (emphasis added) *and* TEX. R. CIV. P. 89 (providing that the "cause" shall be transferred and "such suit" filed in the new county, but if "the cause" is "severable as to parties defendant" it must be "ordered transferred as to one or more defendants but not as to all") *with* TEX. R. CIV. P. 91a.7 (providing for dismissal of a baseless "cause of action" and award of attorney's fees incurred "with respect to the challenged cause of action," except in "an action" by or against a governmental entity or public official).

Thus, according to the terms' common, ordinary meanings, section 150.002 requires "the plaintiff" to file a certificate of merit in "any [lawsuit] or arbitration proceeding" against a licensed professional, and "the plaintiff" is a party who initiates the "action" or suit, not any party who asserts claims or causes of action within the suit. Third-party plaintiffs and cross-claimants do not initiate a lawsuit or legal proceeding. Because they share some similarities with plaintiffs, the law treats them similarly in limited respects. *See, e.g.*, *Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 800 (Tex. 1992) (noting that a defendant who asserts a cross-claim "becomes a plaintiff *for res judicata purposes*" with respect to compulsory claims relating to the cross-claim) (emphasis added); TEX. R. CIV. P. 85 (providing that a defendant's original answer "may present a cross-action, which *to that extent* will place defendant in the attitude of a plaintiff) (emphasis added). But that does not mean that the law treats them similarly in *all* respects. We thus conclude that, under the common, ordinary meaning of the terms, Comet and Austin Design Group are not "the plaintiffs" in this "action," because they are not the parties who initiated the suit.

## 2. The Context of the Words

Having identified the common meaning of the terms "plaintiff" and "action," we must also consider the context in which those words appear within section 150.002 and the statute as a whole.[13]

---

[13] We agree with the concurring opinion's observation that, because our "tools for analyzing isolated words have limitations, context becomes essential to clarity." *Post* at ___ (Willett, J., concurring). But as the concurring and dissenting justices have previously acknowledged, *both* the words *and* the context matter. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 632 (Tex. 2008) ("When Searching for Statutory Meaning, Words Matter—And So Does Context.") (Willett, J., joined by Hecht, J., dissenting). If we have engaged in an "exhaustive" (if not "masterful," "splendid," and "impressive") analysis, *post* at ___ (Hecht, C.J., dissenting), of the common, ordinary meanings of "plaintiff" and "action," we have done so only and precisely because "words matter." Far from being "detached from reality," *post* at ___ (Hecht, C.J., dissenting), when it comes to fulfilling our role of interpreting statutes, the language of the law *is* our reality, at least unless we decide to start writing the law ourselves. Because the statute does not define the determinative words, we determine and apply their plain, ordinary, common meaning "*unless* a different meaning is apparent from the

13

The dissent considers it obvious that "a third-party plaintiff is a plaintiff." *Post* at ____. We agree that the terms "plaintiff" and "action" may sometimes be used more broadly than their common meanings would support.[14] To conclude that they are used that way here, however, either a statutory definition or the context of the language must clearly demonstrate that they are. So we must consider the entire statute in this case, to determine whether something other than the words' common meaning "is apparent from the context" here. *Molinet*, 356 S.W.3d at 411. Doing so, we conclude that the context does not support a different meaning but instead confirms the common meanings we have identified.

We begin our review of the context by recognizing that the statute requires the plaintiff to file a certificate of merit in "any action *or arbitration proceeding*." TEX. CIV. PRAC. & REM. CODE § 150.002(a) (emphasis added). By using the terms "action" and "arbitration proceeding" together with the conjunction "or," the statute treats the two terms as having a similar meaning. The meaning of individual words "may be ascertained by reference to words associated with them in the statute; and . . . where two or more words of analogous meaning are employed together in a statute, they are understood to be used in their cognate sense, to express the same relations and give color and expression to each other." *Harris Cnty. v. Eaton*, 573 S.W.2d 177, 181 (Tex. 1978). Giving the term

---

context." *Molinet*, 356 S.W.3d at 411 (emphasis added). Having determined the words' common, ordinary meanings, we now consider whether the context compels a different meaning.

[14] We have identified one instance within the Civil Practice and Remedies Code, for example, where it appears that the term "plaintiff" is used interchangeably with the broader term "claimant." *See* TEX. CIV. PRAC. & REM. CODE § 74.351(c) ("If the claimant does not receive notice of the court's ruling granting the extension until after the 120-day deadline has passed, then the 30-day extension shall run from the date the plaintiff first received the notice."). Similarly, we have identified one instance within our Rules of Civil Procedure where it appears that the term "action" is used as a short-hand reference to refer to a cross-claim. *See* TEX. R. CIV. P. 85 (providing that a defendant's original answer may "present a cross-action").

"action" its common meaning recognizes its similarity and relationship to the term "arbitration proceeding," so that in both terms the statute refers to a legal proceeding in which a plaintiff asserts a claim or cause of action. Indeed, if the term "action" referred to a claim or cause of action rather than a lawsuit or legal proceeding, there would be no reason for the statute to refer to an "arbitration proceeding" at all, because parties resolve claims and causes of action in both types of legal proceedings. *See, e.g.*, TEX. CIV. PRAC. & REM. CODE § 171.002 (addressing "claims" subject to arbitration); *In re Labatt Food Serv. L.P.*, 279 S.W.3d 640, 645–46 (Tex. 2009) (holding that a wrongful death "cause of action" must be resolved through arbitration, which "merely changes the forum in which the claims are to be resolved").

Next, we consider that the statute requires the plaintiff to file a certificate of merit "*in*" an action or arbitration proceeding. TEX. CIV. PRAC. & REM. CODE § 150.002(a) (emphasis added). As a matter of ordinary language, it would be at least unusual, if not grammatically incorrect, to say that a plaintiff is "required to file" something "in" a "claim" or "in" a "cause of action." Rather, a party asserts a claim or cause of action "in" a pleading that is filed "in" a lawsuit or "action." The context of section 150.002(a), which requires the plaintiff to file the certificate of merit "with the complaint" and "in any action," thus indicates the common meaning of the term "action" as a lawsuit or legal proceeding.

Similarly, we note that the statute requires the certificate of merit to "set forth specifically" the defendant's conduct giving rise to liability "for *each theory of recovery*" and "the factual basis for *each such claim*." TEX. CIV. PRAC. & REM. CODE § 150.002(b) (emphases added). Rather than requiring the factual support for "the action," as if that term meant a "claim" or "cause of action,"

15

this language demonstrates the statute's recognition of the difference between a "claim" and an "action." Subsection (a) requires the plaintiff to file a certificate of merit "in an action," and subsection (b) requires the certificate to state the factual basis for each legal theory or "claim" asserted in that action.

Turning to the meaning of the term "plaintiff," we observe that, throughout the Civil Practice and Remedies Code, the definitions and usage of the term "plaintiff," as opposed to the term "claimant," are consistent with its common meaning. When addressing frivolous pleadings and claims in chapter 9, for example, the statute uses the term "claimant," rather than the term "plaintiff," and expressly defines the term "claimant" to include "a plaintiff, counterclaimant, cross-claimant, third-party plaintiff, or intervenor, seeking recovery of damages." TEX. CIV. PRAC. & REM. CODE § 9.001(1). The statute consistently utilizes the same approach when addressing proportionate responsibility in chapter 33, *see id*. § 33.011(1), damages in chapter 41, *see id*. § 41.001(1), liability for stalking in chapter 85, *see id*. § 85.001(1), and liability for a year 2000 computer failure in chapter 147, *see id*. § 147.001(2). And when addressing medical liability claims (to impose an expert affidavit requirement similar to chapter 150's certificate-of-merit requirement), the statute uses a similar but slightly different approach, using the term "claimant" and defining that term to mean any person "seeking or who has sought recovery of damages in a health care liability claim." *Id*. § 74.001(a)(2). These provisions demonstrate that when the Legislature wants to use a single term that encompasses third-party plaintiffs, cross-claimants, and counter-claimants along with plaintiffs, it uses the term "claimant," and defines that term accordingly.

By contrast, the Code repeatedly uses the word "plaintiff" to refer to a party who initiates the suit, rather than to every party who asserts a claim for relief within a suit. When addressing the general rule for venue in chapter 15, for example, the statute provides that "all *lawsuits shall be brought*," when other rules do not apply, "in the county in which *the plaintiff* resided at the time of the accrual of the cause of action." *Id*. § 15.002(a)(4) (emphases added). Similarly, although (as noted above) the medical liability act generally refers to "claimants," when addressing discovery procedures it refers instead to "*the plaintiff*," who must serve standard discovery answers and responses "within 45 days after the date of *filing of the original petition*." *Id*. § 74.352(a) (emphases added). And when addressing forum non conveniens motions in chapter 71, the statute uses the word "plaintiff" and defines it broadly to mean "a party seeking recovery of damages for personal injury or wrongful death," but the statute then expressly provides that "[t]he term does not include a counterclaimant, cross-claimant, or third-party plaintiff." *See id*. § 71.051(h)(2). These provisions demonstrate that when the Legislature wants to use a term that includes only a party who initiates a lawsuit, thus excluding third-party plaintiffs, cross-claimants, and counter-claimants, it uses the term "plaintiff," rather than the term "claimant."[15]

---

[15] We note that, as the Civil Practice and Remedies Code recognizes, there may be more than one plaintiff in a single lawsuit, "whether the plaintiffs are included by joinder, by intervention, because the lawsuit was begun by more than one plaintiff, or otherwise." TEX. CIV. PRAC. & REM. CODE § 15.003(a). The recognition that those added to the suit by joinder or intervention may become "plaintiffs" is also consistent with the common meaning of the term, as such joinder or intervention simply places them among those who initiated the suit. *See, e.g*., TEX. R. CIV. P. 40 (explaining circumstances in which "[a]ll persons may join in *one action as plaintiffs*") (emphasis added). Because this case does not present the issue of whether section 150.002 requires each individual plaintiff in a multi-plaintiff suit and those added as plaintiffs by joinder or intervention to file separate certificates of merit, we may not address that issue here without rendering an advisory opinion.

17

Finally, we note that this Court's practice in the Texas Rules of Civil Procedure is also consistent with the common meanings and the statutory usage of the terms "plaintiff" and "third-party plaintiff" to refer to distinct types of parties in a suit. Rule 38, for example, which governs third-party practice, provides that "a defending party, as a third-party plaintiff," may bring claims against a non-party "who is or may be liable *to him* or *to the plaintiff*." TEX. R. CIV. P. 38(a) (emphases added).[16] The person against whom the third-party plaintiff asserts such claims, "hereinafter called the third-party defendant," may then assert any defenses "the *third-party plaintiff* has to *the plaintiff's* claim." *Id.* (emphases added). The third-party defendant must assert any compulsory counterclaims against the third-party plaintiff and any compulsory cross-claims against "other third-party defendants," and "[t]he plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of *the plaintiff's* claim against the *third-party plaintiff*." *Id.* (emphases added). And our rules are also consistent with the statute's broader usage of the term "claimants." *See* TEX. R. CIV. P. 169(a)(1) (creating expedited procedure for certain suits in which "all claimants, other than counter-claimants" seek monetary relief aggregating $100,000 or less).

Having identified the common meanings of the terms "plaintiff" and "action" as referring to a party who initiates a lawsuit, in contrast to a "claimant" who asserts a claim for relief within a lawsuit, and having determined that the context of those terms supports those common meanings,

---

[16] Thus, as the dissent agrees, a third-party plaintiff, under Rule 38, is not a "plaintiff" but "a *defendant* suing a non-party." *Post* at ___ (emphasis added).

18

we conclude that section 150.002's certificate-of-merit requirement applies to a party who initiates the lawsuit, and not to defendants or third-party defendants who assert claims for relief within a suit.

## C. Absurdity and the Purpose of the Statute

Jaster argues that construing section 150.002 to allow a party to bring third-party claims or cross-claims without filing a certificate of merit when a certificate of merit would be required if the same party filed the same claim as a separate suit achieves "an absurd result" and "thwarts" the purpose of the statute. *See* 382 S.W3d at 565 (Henson, J., dissenting). Jaster is correct that courts should not enforce the plain meaning of a statute's text if doing so "leads to absurd or nonsensical results." *Molinet*, 356 S.W.3d at 411. We do not agree, however, that the application of the common meanings of the words used in section 150.002 leads to "absurd results," and we will not ignore the words' common meanings to achieve a purpose or object that is ambiguous at best.

The "bar for reworking the words our Legislature passed into law is high, and should be. The absurdity safety valve is reserved for truly exceptional cases, and mere oddity does not equal absurdity." *Combs v. Health Care Serv. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013).[17] While the dissent and others may think it "odd" for the statute to require claimants to file a certificate of merit when

---

[17] One example of an absurd result may be found in section 150.002(a)'s use of the word "complaint." As the dissent notes, while parties in federal courts file "complaints," *see, e.g.*, Fᴇᴅ. R. Cɪv. P. 3 ("A civil action is commenced by filing a complaint with the court."), parties in Texas courts file "petitions," *see, e.g.*, Tᴇx. R. Cɪv. P. 22 ("A civil suit in the district or county court shall be commenced by a petition filed in the office of the clerk."), so a "'complaint' . . . is not part of Texas civil procedure." *Post* at ___. The dissent wonders why we do not "hold that Chapter 150 is dead letter because it applies only to the filing of a 'complaint', which is certainly not a 'petition.'" *Post* at __. The absurdity doctrine answers that question. To construe section 150.002 of the *Texas* Civil Practice & Remedies Code so that it does not apply to any suit filed in *Texas* courts would present the kind of "exceptional" result that would qualify as "absurd." At a minimum, it would completely nullify the statute as to all such suits, and we cannot "lightly presume that the Legislature may have done [such] a useless act." *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc*., 996 S.W.2d 482, 485 (Tex. 1998). We therefore construe the term "complaint" to mean "petition," contrary to its common meaning, but we do so because the context of the term within the statute as a whole compels that result, not because we think doing so promotes a better public policy or would be more effective in promoting what we assume to be the statute's purpose.

they initiate a lawsuit but not when they assert claims as part of an existing lawsuit, there are legitimate reasons why the Legislature may have chosen this approach. For one, as the majority in the court of appeals noted, third-party plaintiffs and cross-claimants do not control the time and place of suit, and may not have adequate time to obtain the necessary expert analysis by the time their third-party claim or cross-claim is due. 382 S.W.3d at 560.[18]

In addition, as Comet and Austin Design Group argue and the court of appeals' majority also noted, many defendants (like Comet in this case) deny the existence of any design defect, but alternatively assert third-party claims against a design professional, seeking contribution and indemnity in the event that the plaintiff prevails. It would be far more "odd" to require such defendants to file an expert's certificate supporting the merits of the plaintiff's claim, thus requiring the defendants to abandon their denial of the merits. Instead of trying to craft a necessarily complicated certificate-of-merit requirement that would appropriately address defendants who dispute any defect and those who do not, those who seek contribution and indemnity and those who seek affirmative rather than derivative relief, and those who file only cross-claims against existing defendants and those who file third-party claims against new defendants, the Legislature may have decided that the better course was to impose a simpler requirement that applies only to a plaintiff who initiates a lawsuit.

---

[18] The dissent suggests that section 150.002(c) alleviates any such time-crunch issues because the "time may be extended by motion or agreement." *Post* at ___. The "such time" to which this provision refers, however, appears to be the thirty-day extension that subsection (c) grants for cases "in which the period of limitation will expire within 10 days of the date of filing and, because of such time constraints, the plaintiff has alleged that [a certificate of merit] could not be prepared." TEX. CIV. PRAC. & REM. CODE § 150.002(c). Although the parties do not present, and we do not decide, that issue here, it at least appears that subsection (c)'s justice-based extension is available only when the plaintiff files the action within 10 days before limitations expires. If that is so, then subsection (c) would not be nearly as adequate as the dissent suggests.

20

Ultimately, the most that can be said about the alleged "absurdity" of the statute as we read it is that it provides licensed and registered professionals with early protection against most, but not all, meritless claims. Even so, all claimants who assert such claims must support them with adequate and sufficient evidence, and summary judgment will be appropriate against those who cannot. Though some might argue that this approach was not the best policy choice, "we read unambiguous statutes as they are written, not as they make the most policy sense." *Health Care Servs.*, 401 S.W.3d at 629. Even if the result seems to us to be unreasonable, "reasonableness is not the standard for eschewing plain statutory language." *In re Blair*, 408 S.W.3d 843, 859 (Tex. 2013) (Boyd, J., concurring). That high standard is absurdity, and we cannot say that this statute achieves an absurd result.

Nor can we conclude that the statute's plain meaning is inconsistent with the statute's purpose. Ultimately, the dissent concludes that interpreting the statute in accordance with the common, ordinary meaning of its words "partially impairs the statute's purpose." But with regard to the issue before us, all we know of the statute's purpose is that its purpose is to require "the plaintiff" in "any action" to file a certificate of merit "with the complaint." Other than that, the statute does not express its purpose.

Nevertheless, the dissent asserts that the statute's "manifest object" is "to require a prima facie showing of liability at the time certain professionals are sued for malpractice," *post* at ___, and this Court has observed, albeit in a different context, that its purpose is "to deter meritless claims and bring them quickly to an end." *CTL/Thompson Tex., LLC v. Starwood Homeowner's Ass'n, Inc.*, 390 S.W.3d 299, 301 (Tex. 2013). But deciding exactly *which* licensed and registered professionals the

21

Legislature intended to protect (those sued as defendants, those brought into a case as third-party defendants, or both?) and *which* meritless claims the Legislature intended to bring quickly to an end (those filed by a party who initiates a lawsuit, those filed by defendants after they are brought into a lawsuit, or both?) presents a different question. "[N]o legislation pursues its purposes at all costs. Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice." *Rodriguez v. United States*, 480 U.S. 522, 525–26 (1987). We must look to the statute's text to determine the policy choices that the Legislature made when deciding how to achieve the "manifest object" of section 150.002. "[I]t frustrates rather than effectuates legislative intent simplistically to assume that *whatever* furthers the statute's primary objective must be the law." *Id*. at 526. We "are bound, not only by the ultimate purposes [the Legislature] has selected, but by the means it has deemed appropriate, and prescribed, for the pursuit of those purposes." *MCI Telecomm. Corp. v. Am. Tel. & Tel. Co*., 512 U.S. 218, 231 n.4 (1994). The language of section 150.002 indicates that its purpose is to deter and end meritless claims that "the plaintiff" asserts "with the complaint" that initiates an "action." The Legislature has to balance many interests, and for the reasons we have explained, it may have decided that requirement strikes the proper balance. We must rely on the words of the statute, rather than rewrite those words to achieve an unstated purpose.

Finally, we address the dissent's complaint that our analysis of the statute demands too much "precision" from the Legislature, at least if the goal of our analysis is to "giv[e] effect to the Legislature's intent in the enactment." *Post* at ___. We disagree and instead conclude that "[w]e must assume that the Legislature has done its very best to express its intent in the words of the statute

22

itself." *C&H Nationwide, Inc. v. Thompson*, 903 S.W.2d 315, 328 (Tex. 1994) (Hecht, J., concurring and dissenting). We can acknowledge the possibility that, although the Legislature used the words "plaintiff" and "action" in chapter 150, it really meant "claimant" and "cause of action." Indeed, "[i]t is at least theoretically possible that legislators—like judges or anyone else—may make a mistake." *Brown v. De La Cruz*, 156 S.W.3d 560, 566 (Tex. 2004). But even if that's the case here, "courts are not empowered to 'fix' the mistake by disregarding direct and clear statutory language that does not create an absurdity." *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 638 (Tex. 2010) (citing *Brown*, 156 S.W.3d at 566). "Courts are not responsible for omissions in legislation, but we are responsible for a true and fair interpretation of the law as it is written." *Id*. at 637. In other words, as today's dissenting justice has explained, "[a] court must be careful not to substitute its own view of what should have been intended for what *was* intended." *Lane Bank Equip. Co. v. Smith S. Equip., Inc*., 10 S.W.3d 308, 321 (Tex. 2000) (Hecht, J., concurring).

We conclude that construing the terms "the plaintiff" and "any action" in section 150.002 according to their common meanings does not lead to absurd results or undermine the statute's stated purpose.

### III.
### Conclusion

We hold that the certificate-of-merit requirement in section 150.002 of the Civil Practice and Remedies Code applies to "the plaintiff" who initiates an action for damages arising out of the provision of professional services by a licensed or registered professional, and does not apply to a

23

defendant or third-party defendant who asserts such claims. We therefore affirm the court of appeals'

judgment upholding the trial court's denial of Jaster's motion to dismiss.

                                      _____

                                      Jeffrey S. Boyd
                                      Justice

Opinion delivered: July 3, 2014